LESTER KRIEGER,
Plaintiff,

*vs.*

THOMAS D. ANDERSON, THEODORE E. SWIGART, ERNEST T. SKINNER, W. T. CARTER, III, GEORGE R. BRYANT, DILLON ANDERSON, JOHN M. BENNETT, JR., JOHN H. BLAFFER, RORICK CRAVENS, ROBERT K. HUTCHINGS, J. W. LINK, JR., CHARLES A. PERLIZT, JR., LAWRENCE S. REED, EDWARD ROTAN, FRANK STRACHAN, FUNDS, INC., and TEXAS FUND, INC.,
Defendants.

*New Castle, January 8, 1962.*

*Irving Morris,* of Cohen & Morris, Wilmington, and *Abraham L. Pomerantz* and *William E. Haudek,* of Pomerantz, Levy & Haudek, New York City, for plaintiff.

*Aaron Finger,* of Richards, Layton & Finger, Wilmington, and *David W. Peck, Alfred Jaretzki, Jr.,* and *Marvin Schwartz,* of Sullivan & Cromwell, New York City, for defendants Thomas D. Anderson, Theodore E. Swigart, Dillon Anderson, John M. Bennett, Jr., John H. Blaffer, Rorick Cravens, Robert K. Hutchings, J. W. Link, Jr., Charles A. Perlitz, Jr., Lawrence S. Reed, Edward Rotan and Frank Strachan.

*James M. Tunnell, Jr.,* of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants Ernest T. Skinner, W. T. Carter, III and George R. Bryant.

*William S. Potter,* of Berl, Potter & Anderson, Wilmington, for defendant Funds, Inc.

*William F. Lynch, II,* of Morris, James, Hitchens & Williams, Wilmington, for defendant Texas Fund, Inc.

Seitz, Chancellor: At the pre-trial conference the parties agreed that, in aid of the disposition of the action, I should decide certain important issues between the parties. I am doing so because all parties assure me it will aid in determining whether a long and expensive trial will be necessary.

The issues posed by the parties arise out of a difference between them as to the proper interpretation of and inferences to be drawn from parts of the court's opinion denying defendants' motion for summary judgment. *Krieger v. Anderson, ante, p.* 61, 173 *A.2d* 626.

Preliminarily, I emphasize that the plaintiff's complaint, as construed by me, charges two breaches of the fiduciary duty owed by defendants (or some of them) to Fund. In both causes of action plaintiff charges that defendants, in selling their Management Company stock, received a sum substantially in excess of the fair value of their shares and that such excess was payment for the alleged breaches of duty. Defendants of course deny the charges and claim, *inter alia,* that they only received fair value for their stock.

The ultimate issue under each cause of action is whether defendants breached a duty admittedly owed. The dispute concerning the fair value of the shares is obviously relevant evidence in resolving the ultimate issue. Plaintiff now concedes that defendants will be able to prove as a fact that non-control shares of stock of various management companies have been traded or sold at prices ranging in the neighborhood of 37 times annual earnings. He further concedes that the per share price received for the Management stock here was within the same capitalization rate. This is on the basis of proof

tendered for the first time by defendants to plaintiff in preparation for trial. But plaintiff argues that when the defendants came to sell the "control" shares, because such a sale automatically terminated the management and underwriting contracts, their stock must be considered to have had a substantially lesser value. Defendants, of course, contend that if they received fair value from their viewpoint, they should not be considered as having received more than "fair value" merely because the sale terminated the service contracts. They point out that the service contracts terminated at stated periods even while they owned the Management stock and yet the expectancy value based on the probability of renewal was a relevant value factor. They argue that it is only a degree distinction in this area when such contracts are terminated by a sale of the "control" shares.

As I understand plaintiff's reasoning it goes like this: The fair value of the stock where a sale of "control" shares of a management company is involved is tested by the price a willing buyer and a willing seller would reach; since such a sale would terminate the management contract, a willing buyer would not be willing to pay anything approximating its value in the hands of the seller unless he was assured of renewal of the management contract; therefore, payment of the difference is evidence of payment for improper action taken to insure the renewal of the service contracts.

Recalling, once again, that the ultimate issues involve alleged breaches of fiduciary duty, I am satisfied that in resolving such issues it is relevant and material, though not dispositive of the breach of duty issues, that the shares had a relatively similar value in the hands of the sellers and the purchasers because of the fact that here the consummation of the purchase of the stock was conditioned upon renewal of the service contracts. In other words, the purchasers were assured that if the sale was consummated they would, with respect to Management's principal assets, be in relatively the same position as the sellers. Thus, the termination of the service contracts which resulted from the sale of "control" shares did not affect the ultimate assured position of the purchasers.

■ I turn now to the second aspect of the value problem. In the event a breach of fiduciary duty is found and assuming defendants would have the burden with respect to minimizing the *prima facie* amount of recovery, I conclude that when tested by traditional standards of value the sellers received only fair value for their shares. I say this for the reason given above. This would seem to preclude recovery unless plaintiff can suggest some other theory of recovery. Compare *Ballantine v. Ferretti, Sup.* 28 *N.Y.S.2d* 668, 682-685. No question of rescission is involved.

This is a revised opinion filed in the light of plaintiff's motion for reargument. On the basis of this opinion the motion for reargument is denied.

The foregoing legal conclusions may be incorporated in an appropriate order.